Steven Stuart **WOOD, Respondent,**

v.

**MUTUAL SERVICE CASUALTY INSURANCE COMPANY, Appellant.**

No. C5-87-891.

Court of Appeals of Minnesota.

Dec. 1, 1987.

Review Denied Feb. 12, 1988.

Cyril J. Mergens, Hardwick & Mergens, Warroad, for respondent.

Robert J. Schmitz, Richard C. Taylor, Dickel, Johannson, Taylor, Rust & Schmitz, Crookston, for appellant.

Heard, considered and decided by FORSBERG, P.J., and LANSING and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

The trial court declared Steven Wood to be an insured under an automobile insurance policy issued to his father by Mutual Service Casualty Insurance Company (MSI). MSI appeals. We affirm.

## FACTS

In December 1979, Steven Wood was injured when the uninsured automobile he was riding in was involved in an accident. He was on his way home to Warroad, Minnesota, on leave from the U.S. Army.

Steven graduated from high school at age seventeen and enlisted in the Army. Steven left most of his personal belongings at home and maintained a savings account and a safety deposit box in Warroad. His Warroad address remained on his driver's license. Steven did not own a car and used his parents' car. Steven sent much of his Army pay home and if he needed money his parents sent it. While home on leave, Steven bought groceries and helped with household chores.

After basic training Steven returned home for twenty days in December 1977. He was stationed in Germany from December 1977 to December 1979, during which period he returned home to Warroad for a thirty day leave.

Upon reassignment to Fort Riley, Kansas, Steven received a forty-five day leave and flew to Minneapolis. He did not have enough money to continue home and his parents made arrangements for him to ride to Warroad with his sister's boyfriend. It was on this trip that the accident occurred.

The Woods' insurance agent testified that when Steven went into the service, his parents requested that Steven be removed as a named driver and as a result, their premium was reduced. Steven's mother testified that she asked the agent if Steven would be "covered" when he came home on leave and was assured that he would be.

The Woods' insurance policy provided coverage for

a person related to you by blood, marriage or adoption who is a *resident* of your household including a ward or foster child.

(emphasis added).

## ISSUE

Was respondent a member of his parents' household at the time of the accident?

## ANALYSIS

Minn.Stat. § 65B.43, subd. 5 (1978) provided:

"Insured" means an insured under a plan of reparation security * * *, including * * * the following persons not identified by name as an insured while (a) residing in the same household with the named insured and (b) not identified by name in any other contract for a plan of reparation security complying with sections 65B.41 to 65B.71 as an insured:

\*   \*   \*   \*   \*   \*

(2) other relative of a named insured * * *.

A person resides in the same household with the named insured if that person usually makes his home in the same family unit, even though he temporarily lives elsewhere.

Steven is the son of Irvin Wood, the named insured, and at the time of the accident was not named on a separate automobile insurance policy. The sole issue is whether Steven was a resident of his father's household.

Residency in a household is a question of fact. *Fruchtman v. State Farm Mutual Automobile Insurance Co.*, 274 Minn. 54, 55, 142 N.W.2d 299, 300 (1966). The Minnesota Supreme Court has reviewed a number of cases involving residency and each case turns on its own specific set of facts. *See Fruchtman*, 274 Minn. 54, 142 N.W.2d 299; *Rosenberger v. American Family Mutual Insurance Co.*, 309 N.W. 2d 305 (Minn.1981); *Firemen's Insurance Co. v. Viktora*, 318 N.W.2d 704 (Minn. 1982). This court recently considered the question of household residency in *French v. State Farm Mutual Automobile Insurance Co.*, 372 N.W.2d 839 (Minn.Ct.App. 1985), and *Skarsten v. Dairyland Insurance Co.*, 381 N.W.2d 16 (Minn.Ct.App. 1986), *pet. for rev. denied* (Minn. Mar. 27, 1986). Rather than factually distinguish each for this case, we shall focus on the facts that lead us to our conclusion.

In *Fruchtman*, the court noted:

It is not an unusual practice for adult, emancipated children * * * serving in the armed forces, to use their parents' address as a place where mail is certain to reach them. This is not necessarily an indication of an intention to return to the family circle, but often is merely a matter of convenience. The same may be said of the fact that plaintiff kept a great many of his personal effects in his parents' home.

274 Minn. at 57, 142 N.W.2d at 301. The court suggested that a party's "ultimate intention to return to some other location" must be considered. *See id.*

In *Rosenberger*, the supreme court found a young woman was a resident of her stepfather's household because she was not self-supporting, she resided in her stepfather's house for two months, she had no specific future plans to leave the home, she was 19 at the time of the accident, and there was a conflict in the evidence as to intent to maintain a permanent relationship. *See Rosenberger*, 309 N.W.2d at 309–10. In *Viktora*, the court adopted criteria laid out in a previous Wisconsin case, *Pamperin v. Milwaukee Mutual Insurance Co.*, 55 Wis.2d 27, 197 N.W.2d 783 (1972). Factors to be considered in determining residency included (1) living under the same roof; (2) maintenance of a close relationship; and (3) whether the intended duration was substantial and such that the parties would consider the relationship in contracting for such things as insurance. *See Viktora*, 318 N.W.2d at 706.

In *French* this court, in finding non-residency, found it significant that a young man deliberately stayed away from his parents' home and his parents provided him with no assistance. *See French*, 372 N.W. 2d at 843.

■ We conclude, in the final analysis, that, in determining residency in a household, factors to be considered include:

(1) age of the person;

(2) whether a separate residence is established;

(3) self-sufficiency of the person;

(4) frequency and the duration of the stay in the family home; and

(5) intent to return.

The fact that belongings remain in the home and the home continues to be the mailing address may be considered, but are not dispositive.

■ Now let's look at the facts here. Steven was only seventeen years old when he joined the Army. He never established a separate residence and continued to be dependent on his parents for some support. His career plans were uncertain. He considered both an Army career and involvement in his parents' business in Warroad. He returned to his parents' home every time he had the opportunity and stayed there the entire time. Both he and his parents testified that they considered the parents' home as Steven's permanent home and his stay in the Army was temporary. He sent most of his money home where his parents could use it or send it to him when needed. Most of his personal belongings remained in the home. We find he clearly intended to return home. Based on this evidence, we found the trial court's findings were not clearly erroneous and so we must uphold them. *See* Minn.R.Civ.P. 52.-01; *Skarsten,* 381 N.W.2d at 18.

## DECISION

The evidence supports the trial court's determination that Steven Wood was a resident of his parents' household at the time of the accident.

Affirmed.